UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES, ex rel.**
**CAROLYN VARGAS, and**
**CAROLYN VARGAS, individually**

                **Plaintiff/Relator,**

-vs-                                                                      Case No.:  6:05-cv-712-Orl-19DAB

**LACKMANN FOOD SERVICES, INC.,**
**LACKMANN MANAGEMENT OF**
**FLORIDA, INC.,**
**LACKMANN CULINARY SERVICES,**
**INC., and**
**LACKMANN PERSONNEL, INC.,**

                **Defendants.**
_____

**ORDER**

This case comes before the Court on the following:

1. The Motion to Dismiss of Defendants Lackmann Food Services, Inc., Lackmann Management of Florida, Inc., Lackmann Culinary Services, Inc., and Lackmann Personnel, Inc.  (Doc. No. 18, filed on March 8, 2006).

2. The Response of the United States and Carolyn Vargas to Defendants' Motion to Dismiss.  (Doc. No. 21, filed on April 3, 2006).

**Background**

The following allegations are drawn from Plaintiff's First Amended Complaint.  (Doc. No. 16, filed February 15, 2006).

Lackmann Food Services, Inc., Lackmann Culinary Services, Inc., Lackmann Management of Florida, Inc., and Lackmann Personnel, Inc. (hereinafter referred to collectively as "Lackmann") were under contract with the United States Government through the National Aeronautic & Space Administration (NASA) to operate a food concession by preparing and serving meals to employees of the United States, members of the United States Armed Forces, contractor employees, Government invitees, and other intended beneficiaries of the NASA contract. (*Id.* at ¶ 5). Lackmann was obligated to seek approval for and receive at specified times on a semi-annual basis approximately 50 percent of the net revenue accrued from sales of food. (*Id.*)

Beginning in April 2000, Carolyn Vargas began to work as a culinary worker for Lackmann. (Doc. No. 16, filed February 15, 2006). In late 2001, Vargas complained to supervisors in her chain-of-command in Florida and in Woodbury, New York, including Lackmann's President, about Lackmann's persistent practice of serving outdated fish and other food to NASA employees, contractors, and Government invitees. (*Id.* at ¶ 8). The practice of using outdated, decayed, and contaminated food was disguised in highly spiced dishes such as barbecue and chili. (*Id.* at ¶¶ 8, 9). Vargas repeatedly complained to Lackmann supervisors regarding the use of substandard food, but her supervisors told her that the chef's job was to save money. (*Id.* at ¶ 11). In April 2002, when the health inspector visited the Lackmann operation, the Lackmann chef instructed Vargas to lie to the inspector by telling him that Lackmann dumped all leftovers every day. (*Id.* at ¶ 12).

On February 15, 2006, Plaintiff/Relator Carolyn Vargas filed an Amended Complaint on behalf of herself and the United States against Defendants Lackmann Food Services, Inc., Lackmann Management of Florida, Inc., Lackmann Culinary Services, Inc., and Lackmann Personnel, Inc. (Doc. No. 16). In the Amended Complaints, Plaintiff claims that from late 2001 until on or after October 31,

2003, Lackmann knowingly presented or caused to be presented false claims for payment for the sale and serving of substandard food to officers and employees of the United States, members of the Armed Forces, contractor employees, and Government invitees.  (*Id.* at ¶ 15).  Plaintiff further alleges that at least one of the three entrees served by Lackmann each day, which averaged 500 servings per week, was spoiled, contaminated, or unfit for human consumption.  (*Id.* at ¶ 16).  Lackmann purportedly engaged in conduct that was the equivalent of submitting approximately 500 claims each week for 100 weeks, amounting to an estimated 50,000 instances in which Lackmann made false claims in applying for payments for substandard food.  (*Id.* at ¶ 18).

The Amended Complaint contains six counts.  Counts One through Five are claims under the False Claims Act for presenting false claims to Government employees, obtaining payment for false claims from the Government, false claims holdbacks, false claims conspiracy, and wrongful termination.  Count Six is a claim under Florida law for whistle blower retaliation.

On March 8, 2006, Defendants filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 18).  Defendants argue that Counts One through Five fail to state a cognizable claim under the False Claims Act because the allegations regarding the making of a false claim are insufficient as a matter of law, that Count Three fails satisfy the specificity requirements of Rule 9(b) and fails to track the plain language of the statute, that Count Four fails to state a claim for conspiracy because Plaintiff fails to allege that Defendants are distinct entities, and that Count Six is a state law claim for which the Court should decline to exercise pendent jurisdiction.

On April 3, 2006, Plaintiff filed a Response to Defendants' Motion to Dismiss.  (Doc. No. 21).  This Order analyzes Defendants' Motion to Dismiss.

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**Analysis**

***1. Argument that Counts One through Five Fail to State a Claim Because the Allegations are Insufficient to Demonstrate that Defendants made a False Claim***

Defendants argue that the Court should dismiss Counts One through Five because the allegations are insufficient as to the making of a false claim which is a prerequisite to recovery under the False Claims Act. Defendants contend that the false claims alleged by Plaintiff are individual point of sale cash register transactions in which patrons paid for allegedly outdated food. Contending that the Amended Complaint is completely lacking in any allegation that the Government either paid for or reimbursed any of the customers for food purchased or that Defendants intended to extract money from the Government in connection with these individual point of sale transactions, Defendants urge the Court to dismiss Counts One through Five.

The False Claims Act permits private persons to file a civil action against any person who:

(1) knowingly presents, or causes to be presented, to an officer of the United States

>Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
>(4) has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt.

31 U.S.C. § 3729(a)(1)-(4) (1994).

The submission of a false claim is the *sine qua non* of a False Claims Act violation. *United States ex rel Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002). The Act attaches liability, not to the underlying fraudulent activity, but to the "claim for payment." *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). A "claim" under the Act is a "demand for money" that causes the Government to distribute funds or to "otherwise suffer immediate financial detriment." *United States v. McNinch*, 356 U.S. 595, 599 (1958)  The paradigmatic example of a false claim is a fraudulent invoice for goods or services. *Lab Corp. of Am., Inc.* 290 F.3d at 1311 (internal citation omitted). The Act also applies more generally to other demands for Government funds such as submitting a false application for a Government loan or a fraudulent claim for federal assistance. *Id.* (internal citations omitted).

A false claim that is presented to a federal grantee rather than to the Government is not presented to an officer or employee of the United States Government so as to be actionable under the Act simply based on the fact that payment will come out of funds that the grantee received from the Government in the past. *United States ex rel. Totten v. Bombadier Corp.*, 380 F.3d 488, 493 (D.C. Cir. 2004), *cert. denied*, 544 U.S. 1032 (2005). If, however, the Government reimburses the grantee for

funds that the grantee has already disbursed to the claimant, liability will attach.[1]  *Id.*

In the instant case, Plaintiff alleges that from late 2001 until on or after October 31, 2004, Defendants knowingly presented or caused to be presented to an officer or employee of the United States or to a member of the Armed Forces of the United States false claims for payment regarding the sale and serving of substandard food.  (Doc. No. 16, ¶ 15).  There are no allegations in the Amended Complaint that the officers or employees paid for allegedly substandard food with money that they had previously received from the Government.  Furthermore, Defendants do not cite any cases to the Court, nor has the Court's independent research produced a case, demonstrating that the False Claims Act would not apply to this set of facts.  Because Plaintiff alleges that Defendants knowingly presented false claims to officers and employees of the United States and because there are no allegations that grantees paid claims with money received from the Government at an earlier time period, Defendants' argument that the allegations of the Amended Complaint are insufficient to demonstrate that a false claim was made is without merit.

In the alternative, Defendants claim that the Court should dismiss Counts One through Five on the basis of clauses contained in the Concession Agreement attached to the Amended Complaint.  The Concession Agreement provides that Defendants would operate the facility and pay all operating expenses, taxes, and fees out of the revenue collected.  (Doc. No. 16-2, Art. 4B).  Defendants were

---

[1] The point at which liability attaches focuses on the time period in which the Government pays the claimant or grantee.  *See United States ex. rel. Totten v. Bombadier Corp.*, 380 F.3d 488, 493 (D.C. Cir. 2004).  False Claims Act liability attaches if the Government *provides* the funds to the grantee upon presentment of a claim to the Government.  *Id.*  Liability also attaches if, after the grantee presents the claim, the Government *provides* the funds to the claimant.  *Id.*  In *Bombadier Corporation*, the District of Columbia Circuit rejected the argument that a claim presented to grantees may be considered effectively presented to the Government under the language of the False Claims Act if the claims are paid with funds the grantee *received* from the Government in the past.  *See id.* at 492-93.

obligated to deposit 50 percent of the revenue remaining after payment of expenses, taxes, and fees into a separate account and were entitled to a percentage of the amount in that separate account based upon a periodic performance evaluation conducted by the Government.  (*Id.* at Art. 4C).

Defendants argue that the Concession Agreement clearly demonstrates that the Government did not provide any funds directly to Defendants and that Defendants never made a demand on the Government for payment because the Government based its transmission of the funds in the separate account on a performance evaluation.  However, Plaintiff alleges that Defendants submitted false claims to Government employees, and, at the motion to dismiss stage, the Court views the allegations in the Amended Complaint in the light most favorable to Plaintiff.  Even more importantly, a reasonable inference can be made that the Government would have likely given Defendants a smaller percentage of funds from the separate account if the Government knew that its employees were served substandard food and that the failure to disclose such information to the Government constitutes a false claim.  In effect, Plaintiff alleges that Defendants denied the Government the full value of the contract by serving contaminated food and by falsely certifying that the food was healthy.  This allegation is sufficient to demonstrate Defendants' alleged action of making a false claim for payment on the Government.  *See, e.g., Faulk v. United States*, 198 F.2d 169 (5th Cir. 1952) (action under the False Claims act brought by United States against the defendant where the defendant defrauded the United States by supplying and delivering to the Army Air Force Base recombined or reconstituted milk in violation of the defendant's contract with the United States which required fresh milk); *see also Shaw v. AAA Eng'g & Drafting Inc.*, 213 F.3d 519, 531 (10th Cir. 2000) (explaining that the Senate Committee on the Judiciary noted that a false claim under the Act "'may take many forms, the most common being a claim for goods or services not provided, or provided in violation of contract terms,

specification, statute, or regulation.'") (citing S.Rep. No. 99-435 at 9, *reprinted in* 1986 U.S.C.C.A.N. at 5274).

*2. Argument that Count Three Fails to Satisfy the Requirements of Rule 9(b) and Fails to Track the Language of the Statute*

Defendants argue that Count Three does not satisfy Rule 9(b) because it fails to track the language of the statute. Claiming that there are no specific allegations which remotely suggest that Defendants were in possession or control of property or money used by the Government or that Defendants received a certificate of any kind, Defendants urge the Court to dismiss Count Three.

Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. *Coopre v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). To meet the requirements of Rule 9(b) as to the False Claims Act, Plaintiff's Amended Complaint must allege "facts as to the time, place, and substance" of Defendants' alleged fraud, specifically "the details of [Defendants'] allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 567-68 (internal citation omitted).

In the Amended Complaint, Plaintiff alleges that from late 2001 until on or after October 21, 2003, Defendants knowingly presented false claims for substandard food payments to officers and employees of the United States, that at least one of the three entrees served each day by Lackmann was not fit for human consumption which averaged 500 servings per week, and that Government employees paid $1,375 per week on substandard food. (Doc. No. 16, ¶¶ 15, 16, 17, 23). Plaintiff alleges specifics regarding the time, place, and substance of the fraud, even including the number of substandard servings per week and the expenditures on substandard food. Because Plaintiff alleges the details of Defendants' allegedly fraudulent acts, the Court finds that Count Three meets the specificity requirement of Federal Rule of Civil Procedure 9(b).

Defendants also argue that Count Three fails to track the plain language of 31 U.S.C. section 3729(a)(4). Defendants claim that the statute contemplates a situation in which a person delivers less property to the Government than is described in a certificate or receipt that the person has received and that the Amended Complaint alleges that Government employees, contractors, and invitees received less edible food than on a certificate they received which is a situation not contemplated by the statute.

Section 3729(a)(4) states that a person is liable to the United States Government if such person:

> has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt.

31 U.S.C. § 3729(a)(4) (1994).

In *United States ex. rel Aakhus v. Dyncorp, Inc.*, 136 F.3d 676, 681 (10th Cir. 1998), the Tenth Circuit found that the "essential elements" of a claim under section 3729(a)(4) include "(1) possession, custody, or control of property or money used, or to be used, by the government, (2) delivery of less property than the amount for which the person receives a certificate or receipt, (3) with intent to defraud or willfully to conceal the property."[2]

In the instant case, Plaintiff alleges that Defendants possessed the Government's money in the form of sale proceeds prior to depositing the money in a Government account, that Plaintiff delivered substandard food, and that Defendants had an intent to defraud Plaintiff at that time. (*See* Doc. No. 16, ¶¶ 5, 9, 12, 12, 23, 26, 28, 29). Delivery of substandard food could constitute delivery of less property than the amount for which the person received a certificate or receipt. Defendants argue that Plaintiff has failed to allege that Defendants received a certificate or receipt. Plaintiff alleges that Defendants

---

[2] The Court's independent research has not produced another federal appellate case explaining the elements of a cause of action under section 3729(a)(4).

caused to be delivered "less edible food than the amount for which the United States and its employees, contractors, and invitees received a certificate or receipt." (Doc. No. 16, ¶ 28). Plaintiff further alleges that Defendants are contractors. (*Id.* at ¶ 5). While inartfully drafted, it can be inferred that Defendants received a certificate or receipt because Defendants are contractors. At the motion to dismiss stage, the Court draws all reasonable inferences in favor of Plaintiff. Because Plaintiff has alleged that Defendants delivered less property than the amount for which Defendants received a certificate or receipt, Plaintiff states a cause of action in Count Three.

*3. Argument that Count Four Fails to Allege a Conspiracy Between Legally Distinct Entities*

Defendants argue that Count Four fails to allege a conspiracy between legally distinct entities because paragraph four of the Amended Complaint alleges that Defendants are "alter egos of each other" and that "the acts of one Defendant legally constitute the acts of each of the others." Accepting those allegations as true, Defendant claims that on the basis of the intracorporate conspiracy doctrine the Court must dismiss Count Four.

The intracorporate conspiracy doctrine originated in the antitrust arena where it seemed logical to conclude that a corporation could not conspire with itself to restrain trade. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). The doctrine provides that just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity to conspire with itself. *Id.* (internal citations omitted). Stemming from basic agency principles, the doctrine "'attribute[s] the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single actor.'" *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767 (11th Cir. 2000) (internal citation omitted).

In the instant case, the issue before the Court is whether Lackmann Food Services, Inc.,

Lackmann Management of Florida, Inc., Lackmann Culinary Services, Inc., and Lackmann Personnel, Inc. constitute a single legal entity. The Circuit Courts have drawn different legal distinctions as to when, if ever, legally distinct but economically related units constitute one actor for the purpose of determining the plurality of actors requirement in the application of the intracorporate conspiracy doctrine in antitrust cases. The Third and former Fifth Circuits have held that "a parent and its wholly owned subsidiaries, when separately incorporated, together provide the requisite plurality of actors." *Blankenship v. Herzfeld*, 721 F.2d 306, 309 (10th Cir. 1983) (internal citations omitted). Commentators have criticized this approach as exalting form over substance contrary to the demands of economic reality. *Id.* (internal citations omitted). The Seventh, Eighth, Ninth, and Tenth Circuits have determined that the ability of related corporations to conspire in violation of antitrust law is a question of fact to be analyzed under the circumstances of each case. *Id.* (internal citations omitted). Factors relevant under this inquiry include the extent of the integration of ownership, whether the corporations have separate managerial staffs, the extent of the similarity of business conducted, the extent to which efficiencies would be sacrificed if they were required to act as two firms, and whether the firms functioned as separate firms before being partially integrated. *Id.* at 309-10 (internal citation omitted).

In Count Four, Plaintiff alleges that Defendants are closely held, interlocking corporations that are alter egos of each other and that Defendants met at Lackmann facilities in Brevard County and Woodbury, New York to conspire with each other to defraud the Government. From these allegations, two competing inferences may be drawn: that the four Defendants are part of the same legal entity based on the fact that they are closely held and interlocking, or, alternatively, that these are related companies that are not necessarily part of the same legal entity. Because all reasonable inferences

must be drawn in favor of Plaintiff at the motion to dismiss stage, the Court finds that Plaintiff has stated a claim for relief for conspiracy.

### Conclusion

Based on the foregoing, the Court **DENIES** the Motion to Dismiss of Defendants Lackmann Food Services, Inc., Lackmann Management of Florida, Inc., Lackmann Culinary Services, Inc., and Lackmann Personnel, Inc. (Doc. No. 18, filed on March 8, 2006).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May __23,____ 2006.

*[Signature]*
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record