**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES,**
**CAROLYN VARGAS, ex rel.**

        **Plaintiff,**

-vs-                                            Case No. 6:05-cv-712-Orl-19DAB

**LACKMANN FOOD SERVICE, INC.,**
**LACKMANN CULINARY SERVICES, INC.,**
**LACKMANN PERSONNEL, INC.**

        **Defendant.**

# ORDER

This case comes before the Court on the following:

1. Defendant's Dispositive Motion for Summary Judgment and Memorandum in Support Thereof[1] (Doc. No. 37, filed Apr. 16, 2007);

2. Appendix (Part 1) to Defendant's Dispositive Motion for Summary Judgment and Memorandum in Support Thereof (Doc. No. 38, filed Apr. 16, 2007);

3. Appendix (Part 2) to Defendant's Dispositive Motion for Summary Judgment and Memorandum in Support Thereof (Doc. No. 39, filed Apr. 16, 2007);

---

[1] The Amended Case Management and Scheduling Order provides that "[a] motion for summary judgment shall specify the material facts as to which the moving party contends there is no genuine issue for trial." (Doc. No. 32, p. 6). Lackmann's Motion for Summary Judgment fails to include a statement of facts. (*See* Doc. No. 37). The Court will consider Lackmann's Motion despite this defect.

4. Plaintiff/Realtor's Response to Defendant's Motion for Summary Judgment (Doc. No. 44, filed May 21, 2007)[2];

5. Plaintiff/Realtor's Notice of Filing Evidence in Support of Plaintiff/Realtor's Response to Defendants' Motion for Summary Judgment (Doc. No. 46, filed May 21, 2007); and

6. Plaintiff/Realtor's Depositions in Support of Plaintiff/Relator's Response to Defendants' Motion for Summary Judgment (Doc. Nos. 47-62, filed May 21, 2007).

**Background**

Defendants Lackmann Food Services, Inc., Lackmann Culinary Services, Inc., Lackmann Management of Florida, Inc., and Lackmann Personnel, Inc. are all subsidiaries of the same parent company, which is not named as a party in this case.[3] (Doc. No. 58, p. 4). The evidence shows that Lackmann Management of Florida, Inc. contracted with the United States Government through the National Aeronautics & Space Administration (NASA) to operate a food concession at Kennedy

---

[2] On April 18, 2007, the Court issued an Order that it would take Defendant's Motion under advisement on May 21, 2007. (Doc. No. 40). Plaintiff did not file her Memorandum in Response to Defendant's Motion until the afternoon of May 21, 2007. (Doc. No. 44). Plaintiff did not file any exhibits or supporting documentation in conjunction with her Response until after the close of business on May 21, 2007. The Court also notes that Plaintiff's Response violates Local Rule 1.05(1) which requires that all filings be double-spaced. The Court will consider Plaintiff's filings despite their defects.

[3] For the purposes of this Order, all named Defendants are collectively referred to as "Lackmann." Lackmann Food Services of Old Country Road is the parent company that owns one hundred percent of each of the named Defendants. (Doc. No. 58, p. 4). Lackmann Food Services of Old Country Road is wholly owned by the Lackmann family. (*Id.*) Plaintiff was directly employed by Defendant Lackmann Personnel, Inc., which is a paymaster corporation for all of the employees in each Lackmann organization. (*Id.* at pp. 5-6). Lackmann Culinary Services, Inc. is a corporation, but it is used as a trade name for all of its contracts and everything it does as a corporation. (*Id.* at p. 5). Lackmann Food Services, Inc. was a former corporation and trade name before it was replaced by Lackmann Culinary Services, Inc. (*Id.* at p. 6). Lackmann Management of Florida, Inc. is the corporation that controls all of Lackmann's contracts within the State of Florida. (*Id.* at p. 6). At all relevant times, all of the Lackmann entities were controlled by Thomas Lackmann. (*Id.* at pp. 7-8).

Space Center. (*Id.* at pp. 3-4). Plaintiff was employed by Lackmann Personnel, Inc. to work in the Kennedy Space Center Cafeteria from April 2000 until she was laid off on October 31, 2003.[4] (Doc. No. 47, pp. 6, 8; Doc. No. 58, p. 6).

In late 2001, Plaintiff started complaining to supervisors in her chain-of-command regarding Lackmann's practice of serving outdated fish and other food. (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 8). Lackmann's use of contaminated food was disguised in highly spiced dishes such as barbecue and chili. (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶¶ 8, 9). Plaintiff repeatedly complained to Lackmann supervisors regarding the use of substandard food and often refused to serve certain meals. (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 9). Plaintiff's supervisors told her it was the chef's job to save money. (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 11). When the health inspector visited the Lackmann operation, the Lackmann chef instructed Plaintiff to lie to the inspector by telling him that Lackmann dumped all leftovers every day. (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 12). After Lackmann did not change its practices, Plaintiff started complaining to NASA directly, without informing her supervisors. (Doc. Nos. 46-8, 46-9, 46-10). When Lackmann supervisors found out about the complaints, Plaintiff alleges that they assumed she was the individual who spoke to NASA and began treating her unfavorably at work. (Doc. No. 46-13). On July 15, 2003, Plaintiff wrote Lackmann's president

---

[4] Despite the fact that all of the companies are related, Lackmann Management of Florida, Inc. is the only named Defendant who was involved in managing and controlling the NASA contract. (Doc. No. 58, pp. 4, 6-7). Although Plaintiff was employed by Lackmann Personnel, Inc., Defendants contend that this company had no involvement with the NASA contract. (*Id.* at p. 6). No issue has been raised on summary judgment as to who employed Plaintiff. Defendants have made no attempt to distinguish themselves for the purposes of the underlying motion and have not contended that Plaintiff has sued incorrect parties. Rather, Defendants have consistently referred to themselves collectively as "Lackmann." (Doc. No. 37). Consequently, the Court will treat them as a consolidated entity for the purposes of deciding the underlying retaliation claims on motion for summary judgment. To prove a claim for retaliation at trial, a plaintiff must prove who her employer was and who the relevant decision makers within such employer were.

a letter complaining about her supervisors' conduct. (*Id.*)  Plaintiff continued to complain to her supervisors until she was laid off on October 31, 2003.  (Doc. No. 47, pp. 6, 54-55; 59-60; 63).  According to Lackmann, Plaintiff was laid off because her position was being eliminated. (Doc. No. 39, pp. 79, 81).

On February 15, 2006, Plaintiff filed an Amended Complaint on behalf of herself and the United States against Defendants Lackmann Food Services, Inc., Lackmann Management of Florida, Inc., Lackmann Culinary Services, Inc., and Lackmann Personnel, Inc. (Doc. No. 16).  Counts One through Five of the Amended Complaint are claims under the False Claims Act for presenting false claims to Government employees, obtaining payment for false claims from the Government, false claims holdbacks, false claims conspiracy, and wrongful termination.  (*Id.*)  Count Six is a claim under Florida law for whistleblower retaliation. (*Id.*)  On April 16, 2007, Lackmann moved for summary judgment on all six counts. (Doc. No. 37).  Plaintiff opposes Lackmann's Motion. (Doc. No. 44).

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is only appropriate when "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The moving party has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

## The False Claims Act

The False Claims Act ("FCA"), 31 U.S.C. Section 3729 *et seq.*, permits private persons to file a civil action in the name of the United States against an individual who:

> (1) knowingly presents, or causes to be presented, to an officer of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
> (4) has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt.

31 U.S.C. §§ 3729(a)(1)-(4), 3730(b)(1). For the purposes of the FCA, a claim:

> includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c). The FCA creates a cause of action for wrongful termination for:

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment

> by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section.

31 U.S.C. § 3730(h).

## Analysis

I.   **Count I – Presenting False Claims to Government Employees in Violation of 31 U.S.C. § 3729(1) and Count II - Obtaining Payment for False Claims From the Government in Violation of 31 U.S.C. § 3729(2).**

Submitting a false claim is the *sine qua non* of a FCA violation because the act attaches liability to the claim for payment itself, not the underlying fraudulent conduct. *United States ex rel Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *see* 31 U.S.C. § 3729. Without a showing of *presentment*, there is no actionable damage under the FCA. *Clausen,* 290 F.3d at 1311. Lackmann alleges that there is no evidence of presentment of a false claim to the government and moves for summary judgment with respect to Count I and II. (Doc. No. 37, pp.1-2, ¶¶ 1,2). With respect to Count II, Lackmann also alleges that there is no evidence of payment of any false claim allegedly presented to the government. (*Id.* at p. 2, ¶ 2).

There are issues of fact which must be resolved at trial. A false claim under the FCA can take many different forms. *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531 (10th Cir. 2000) (citing S. Rep. No. 99-435 at 9, *reprinted* in 1986 U.S.C.C.A.N. at 5274). A restrictive view of the evidence should not be taken on summary judgment in order to make assumptions about the specific facts or types of claims Plaintiff will attempt to prove at trial. At this juncture it is sufficient to note that a false certification of compliance with a government contract can constitute a violation of 31 U.S.C. § 3729(a)(1). *E.g., Shaw v. AAA Eng'g & Drafting,* Inc. 213 F.2d at 531; *United States v.*

*Aerodex, Inc.*, 469 F.2d 1003, 1007-08 (5th Cir. 1972) ("The mere fact that the item supplied under contract is as good as the one contracted for does not relieve defendants of liability if it can be shown that they attempted to deceive the government agency. . . . [L]iability under the False Claims Act . . . attach[ed] because of the deliberate misbranding."); *Faulk v. United States,* 198 F.2d 169, 171-72 (5th Cir. 1952) (FCA action against defendant for defrauding the United States by supplying an Army Air Force Base recombined or reconstituted milk in violation of the defendant's contract with the United States which required fresh milk).[5]

The Court has already construed Plaintiff's verified Amended Complaint[6] and reasoned that the allegation that "Defendants denied the Government the full value of the contract by serving contaminated food and by falsely certifying that the food was healthy . . . [was] sufficient to demonstrate Defendants' alleged actions of making a false claim for payment on the Government." (Doc. No. 27, p. 7). Additionally, the concession agreement granted Lackmann "a preferential right" to conduct a "revenue-producing" cafeteria at NASA's Kennedy Space Center. (Doc. No. 46-2, p. 7). In exchange, the Government was required to provide Lackmann with services, such as pest control, and property, such as food service equipment. (Doc. No,. 46-3, p. 1). The agreement required the food Lackmann provided to "be in accordance with FDA code and all applicable local, state, and Federal laws and regulations." (*Id.* at p. 48). The agreement specifically allowed the Government to terminate the contract for unsatisfactory performance. (*Id.* at pp. 5-6). Under the

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted the decisions of the United States Court of Appeals for the Fifth Circuit that were handed down prior to October 1, 1981 as binding precedent.

[6] Plaintiff filed her Amended Complaint on February 15, 2006. (Doc. No. 16). The Court denied Lackmann's Motion to Dismiss on March 8, 2006. (Doc. No. 27). Plaintiff has since verified all of the factual allegations of her Amended Complaint. (Doc. No. 46-5, ¶ 2).

agreement, Lackmann retained all proceeds from the food sales that were necessary to pay its "allowable expenses" by depositing the funds in its own account. (Doc. No. 46-2, pp. 11-12; Doc. No. 39, pp. 46-47). Allowable expenses included any reasonable expenses that were "in accordance with . . . [the] terms of the contract" and did "not exceed that which would be incurred by a prudent person in the normal conduct of competitive business." (Doc. No. 46-2, p. 12). If there was a profit, a portion of the remaining money was to be deposited in an interest bearing account, a portion of which would be retained and controlled by NASA if Lackmann's performance was not completely satisfactory. (Doc. No. 46-2, p. 12; Doc. No. 39, pp. 46-47). The amount of money that NASA would retain and control was determined in part by the Government's evaluations of Lackmann's performance and compliance with the terms of the contract. (Doc. No. 46-3, pp. 64-70; Doc. No. 39, pp. 47-48). Plaintiff's testimony is admissible evidence that Lackmann purposely failed to comply with the terms of the contract by serving spoiled food in order to save money. (*E.g.,* Doc. No. 46-5; Doc. No. 47). Plaintiff's testimony is also admissible to establish the fact that Lackmann managers ordered employees to lie to government employees about the quality of the food served in order to pass health inspections. (*Id.*) Thus, there is evidence to support a finding that Lackmann made false claims.

Lackmann contends that it did not receive any profits from the operation during the time period in which the alleged false claims occurred, and thus it never received payment from the Government on any false claims. (Doc. No. 37, pp. 10-11). However, by operating the cafeteria under the concession agreement, Lackmann obtained valuable services and property from the United States Government. (Doc. No,. 46-3, p. 1). A claim under the FCA specifically includes "any request or demand, whether under a contract or otherwise, for money or property which is made to

a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c). Under certain circumstances, improper receipt of services or goods from the United States to which a person is not entitled are within the definition of a false claim. *E.g., United States v. Alperstein,* 183 F. Supp. 548, 551 (S.D. Fla. 1960), *aff'd* 291 F.2d 455 (5th Cir. 1961) (case under prior version of FCA finding veteran who improperly received free care from hospital had filed false claim because hospitalization services " represent a substantial expenditure of funds and 'financial detriment' . . . [and] involve property and things of very definite tangible value."). The Government had the right to terminate Lackmann's contract for unsatisfactory performance and thereby cease providing Lackmann with the property and services to which it was entitled under the agreement. (*See* Doc. No. 46-3, pp. 5-6). Drawing all reasonable inferences in favor of Plaintiff, there is evidence in the record that could support a finding that Lackmann made a false claim for payment from the United States and received valuable property and services on the basis of its false claims regarding satisfactory performance of its contract. Thus, the Court denies Lackmann's Motion for Summary Judgment with respect to Counts I and II.

**II.     Count III - False Claim Holdbacks in Violation of 31 U.S.C. § 3729(4).**

Title 31 U.S.C. Section 3729(a)(4) states that a person is liable to the United States Government if he:

> has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt.

Lackmann does not dispute the fact that it has possession, custody, or control of property belonging to the Government." (Doc. No. 37, p. 13). Instead, Lackmann cites *United States ex. rel Aakhus*

*v. Dyncorp, Inc.,* 136 F.3d 676, 681 (10th Cir. 1998), and argues that Plaintiff has failed introduce evidence of the "essential elements" of a claim under 31 U.S.C. § 3729(a)(4) because there is no evidence showing it received a certificate or receipt and delivered less money or property than the amount for which it received the certificate or receipt.[7]  (Doc. No. 37, p. 2, ¶ 3, pp. 13-14).

In the context of the instant case, the Court previously declined to adopt the Tenth Circuit's explanation of the elements of a claim under Section 3729(a)(4) and reasoned that "[d]elivery of substandard food could constitute delivery of less property than the amount for which the person received a certificate or receipt." (Doc. No. 27, p. 9). Plaintiff has verified the allegations of her Amended Complaint which are sufficient to indicate that Lackmann delivered substandard food. (Doc. No. 46-5, ¶ 2; Doc. No. 16). Because a verified complaint is considered evidence for the purposes of a motion for summary judgment, Lackmann's Motion for Summary Judgment with respect to Count III must be denied. Fed. R. Civ. P. 56(c).

## III.    Count IV - False Claims Conspiracy in Violation of 31 U.S.C. § 3729(3).

Plaintiff alleges that the named Defendants conspired to defraud the government by serving substandard food. (Doc. No. 16, ¶¶ 31-37). Lackmann alleges that it is entitled to summary judgment with respect to Count IV because there is sufficient integration to preclude liability for FCA conspiracy under the intracorporate conspiracy doctrine or because there is no evidence in the record that shows Defendants conspired with one another. (Doc. No. 37, p. 2, ¶ 4). The Court finds it unnecessary to consider the intracorporate conspiracy doctrine because Plaintiff fails to cite any

---

[7]    In *United States ex. rel Aakhus v. Dyncorp, Inc.,* 136 F.3d 676, 681 (10th Cir. 1998), the Tenth Circuit found that the "essential elements" of a claim under section 3729(a)(4) include "(1) possession, custody, or control of property or money used, or to be used, by the government, (2) delivery of less property than the amount for which the person receives a certificate or receipt, (3) with intent to defraud or willfully to conceal the property."

facts to controvert Defendant's contention that there is insufficient evidence of a conspiracy. (Doc. No. 44, pp. 16-17).

Plaintiff's Response merely includes the conclusory allegation that:

[t]he evidence shows that managers and cooks employed by Lackmann personnel conspired with each other and with Lackmann Mgmt. to submit false claims by alerting each other of impending inspections, mislabeling substandard food, making false statements to inspectors and NASA officials, intimidating employees from disclosing the fraud, and other fraudulent practices.

(*Id.* at p. 16). Such conclusory allegation is not sufficient to withstand summary judgment. Fed. R. Civ. P. 56(e); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value. One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.") (internal citations omitted)). After consideration of the record presented, the Court finds no evidence that indicates that the named Defendants conspired with each other to defraud the Government.[8] Although Plaintiff has verified the allegation from her Amended Complaint that "[a]ll Defendants met at Lackmann facilities . . . on virtually every business day and conspired with each other to defraud the Government by getting one or more false or fraudulent claims allowed or paid," Plaintiff admitted in her deposition that she was without personal knowledge as to the validity of the allegations of conspiracy in the Amended Complaint and had never been told that the named Defendants conspired

---

[8] Plaintiff has introduced evidence showing that individual managers told employees to mislabel food. (*E.g.,* Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 12; Doc. No. 47, pp. 76-77). Plaintiff has also introduced evidence that the named Defendants were subsidiaries of the same parent company. (Doc. No. 58, pp. 4-8). Although the Lackmann entities are related, the testimony in the evidence indicates that only Lackmann Management of Florida, Inc. had any involvement with the NASA contract. (*Id.* at pp. 6-7).

to defraud the Government.  (Doc. No. 46-5, ¶ 2; Doc. No. 16, ¶ 33; Doc. No. 39, pp. 54-55).  Thus, Plaintiff's allegations of conspiracy are inadmissible as evidence.  Fed. R. Civ. P. 56(e).  Because Plaintiff has presented no admissible evidence of a FCA conspiracy, Defendant's Motion for Summary Judgment with respect to Count IV must be granted.

**IV.     Count V - Wrongful Termination in Violation of 31 U.S.C. § 3730(h).**

Title 31 U.S.C. Section 3730(h) creates a cause of action for:

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section.

In order to prevail on her retaliation claim, Plaintiff must show that she was engaged in protected conduct and that her employer retaliated against her on the basis of her protected conduct.  *Mack v. Augusta-Richmond, County, Ga.*, 148 Fed. Appx. 894, 896-97 (11th Cir. 2005).  Protected conduct may include "internal reporting and investigation of an employer's false or fraudulent claims" provided that the employee is investigating "more than his employer's noncompliance with federal or state regulations."  *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 187-88 (3d Cir. 2001) (citations omitted).  When engaging such protected conduct, an employee does not have to be aware of the FCA or motivated by the potential to file a *qui tam* suit; however, an employee cannot establish the requisite causation without showing that her employer was aware of the conduct or feared that there was a "distinct possibility" the employee would file an FCA action.  *Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1146 (11th Cir. 1996).

Plaintiff alleges that Lackmann violated 31 U.S.C. Section 3730(h) because the company terminated her employment in retaliation for her complaints about serving contaminated food.  (Doc.

No. 16, ¶¶ 38-46).  Lackmann moves for summary judgment, arguing that Plaintiff cannot prove all of the elements of a FCA wrongful termination claim.  (*See* Doc. No. 37, pp. 2-3, ¶¶ 5-8). Lackmann specifically alleges that the record is devoid of evidence to prove: (1) it had knowledge of Plaintiff's activity; (2) a retaliatory action occurred because of that activity; and (3) the legitimate nondiscriminatory reason for Plaintiff's termination is merely pretext.[9]  (*Id.* at pp. 15-21).

There is no evidence to indicate that Plaintiff was contemplating filing a false claims action at the time she complained to NASA or her supervisors.  Thus, the Court must assess whether Lackmann was aware of Plaintiff's complaints and whether it contemplated that there was distinct possibility she would file a FCA action.  If a plaintiff does not specifically inform her employer that she is considering filing a false claims action and there is no evidence that the employer learned of this through other means, the distinct possibility test is difficult to apply.  *Mack v. Augusta-Richmond, County, Ga.*, 365 F. Supp.2d 1362, 1379 (S.D. Ga. 2005), *aff'd* 148 Fed. Appx. 894 (11th Cir. 2005).  Courts should focus on determining the employer's motivation for the allegedly retaliatory action.  *Id.*  The key inquiry is whether the "'a factfinder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action against

---

[9] Lackmann's initial statement of the issue on which it is entitled to summary judgment includes the fact that Plaintiff was not engaged in statutorily protected conduct. (Doc. No. 37, p. 2, ¶ 5).  Lackmann's only reference to the issue in its Memorandum of Law is the statement that"[t]here is no evidence in the record demonstrating that Vargas was engaged in a protected activity. . . ." (*Id.* at p. 18).  Local Rule 3.01(a), requires that a party moving for summary judgment provide "a statement of the basis for the request and a memorandum of legal authority in support of the request."  The Court construes Lackmann's failure to support its argument that Plaintiff was not engaged in protected conduct as a waiver of that argument for the purposes of the instant motion. Even so, Plaintiff's decision to report Lackmann's allegedly intentional noncompliance with the contract terms in order to make higher profits and receive money from NASA employees to which it was not entitled and her repeated correspondence outlining further violations could constitute protected conduct.

it or reporting the employer to the government for fraud.'" *Id.* (quoting *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp.2d 1307, 1314 (M.D. Ala. 1999)).

Drawing all reasonable inferences in favor of Plaintiff, there is evidence in the record that could support a FCA retaliation claim. Lackmann admits that it knew an employee complained to NASA about serving contaminated food in 2002 and was aware of the specific allegations in that complaint. (Doc. No. 39, pp. 72-73). Plaintiff's first complaint to NASA alleged that Lackmann was serving contaminated food in order to cut costs and make additional profits. (Doc. No. 46-8). Thereafter, Plaintiff's letters to NASA provide information detailing her observations of improper conduct in the Lackmann cafeteria. (Doc. Nos. 46-9, 46-10). There is a distinct possibility that Lackmann knew that this unnamed employee or NASA could file a false claims action against it on the basis of its persistent noncompliance with the contract and service of spoiled food.

On July 15, 2003, Plaintiff wrote a letter to Lackmann's president explaining that she believed she was being harassed because her supervisors believed she was the employee who complained to NASA. (Doc. No. 46-13). Plaintiff's letter also referenced the fact that Lackmann was serving spoiled food. (*Id.* ap. p. 1). This letter was sufficient to put Lackmann on notice of the possibility that Plaintiff was the employee who complained to NASA. After writing the letter to Lackmann's president, Plaintiff continued to complain about the spoiled food until the time she left Lackmann in October 2003. (Doc. No. 47, pp. 54-55; 59-60; 63).

Considering Plaintiff's complaints to NASA, Plaintiff's letter to the company president, and Plaintiff's continued complaints to her supervisors, it is reasonable to infer that Lackmann contemplated the possibility that Plaintiff was collecting evidence for a FCA claim or would attempt to assist the Government if it brought a FCA claim. The temporal proximity between Plaintiff's

complaints and her layoff provide a basis for inferring the requisite causal connection between Plaintiff's protected conduct and Lackmann's actions. Although Lackmann claims that it had a legitimate, nonretaliatory reason to lay off Plaintiff which she cannot prove is pretextual, in the context of this case an issue of fact remains as to whether the proffered reason for the termination is worthy of belief. (Doc. No. 37, p. 2, ¶ 7); *e.g. Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp.2d 1307, 1317 (M.D. Ala. 1999) (employee may prove pretext by either "persuading the factfinder either directly that a retaliatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief."). Based on the foregoing, the Court denies Lackmann's Motion for Summary Judgment with respect to Count V.

**V.     Count VI - Whistleblower Retaliation in Violation of Florida Whistleblower Act, Florida Statutes § 448.101 *et seq.***

The Florida Whistleblower Act prohibits an employer from retaliating against an employee because she has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). Plaintiff asserts a claim against Lackmann for violation of Florida's Whistleblower Act, Fla. Stat. Section 448.101 *et seq.* (Doc. No. 16, ¶¶ 47-52). Plaintiff contends that Lackmann retaliated against her for objecting and refusing to serve spoiled food, which she alleges is a violation of the law. (*Id.* at ¶ 50). Lackmann moves for summary judgment alleging that Plaintiff cannot sustain her burden of proving a whistleblower retaliation claim under Florida Law. (*See* Doc. No. 37, p. 3, ¶¶ 9-11). Lackmann does not contest the fact that Plaintiff engaged in protected activity; rather it asserts that

Plaintiff did not suffer an adverse employment action.[10] (Doc. No. 37, pp. 21-25). Alternatively, Lackmann contends that even if Plaintiff suffered an adverse employment action, she cannot establish the requisite causal connection. (*Id.* at p. 22-23).

Generally, retaliation claims under the Florida Whistleblower Act are analyzed in the same manner as Title VII retaliation claims. *Smierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950-51 (11th Cir. 2000). Under the Title VII framework, a plaintiff must establish a prima facie case by proving that she engaged in a protected activity, she suffered an adverse employment action and some causal link exists between the protected activity and adverse employment action. *Id.* at 950. With respect to allegations of a violation of Section 448.102(3), the plaintiff must prove an actual "violation of a law, rule, or regulation" occurred in order to establish a prima facie case. *White v. Purdue Pharma, Inc.,* 369 F. Supp.2d. 1335, 1339 (M.D. Fla. 2005). Once a plaintiff establishes her prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. *Smierminski,* 216 F.3d at 950. If the employer meets its burden of production, the employee must prove by a preponderance of the evidence that the employer's proffered reason is pretext for prohibited retaliatory conduct. *Id.*

A plaintiff may reassert the allegations of her prima facie case in order to prove pretext. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). In certain instances, "the

---

[10] Although Lackmann's initial statement of the issues on which it is entitled to summary judgment includes the fact that Plaintiff was not engaged in statutorily protected conduct, Lackmann introduces no argument or support for this with respect to the issue in its Memorandum of Law. (Doc. No. 37, p. 3, ¶ 9, pp. 21-25). Local Rule 3.01(a) requires that a party moving for summary judgment provide "a statement of the basis for the request and a memorandum of legal authority in support of the request." The Court construes Lackmann's failure to support or otherwise refer to its argument that Plaintiff was not engaged in protected conduct as a waiver of that argument for the purposes of the instant motion.

plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981)).  Thus, once an employer articulates a legitimate reason, there may be a factual issue as to whether a plaintiff's prima facie case is sufficient to meet her burden of persuasion. *See id.*

Lackmann's brief focuses on harassment as Plaintiff's alleged adverse employment action and argues that Plaintiff's allegations do not meet the requisite level of substantiality. (Doc. No. 37, pp. 22-25). Lackmann does not address the layoff of Plaintiff in this context. (*See id.*) A layoff adversely affects the terms and conditions of employment and thus can be considered a retaliatory personnel action under the Florida Whistleblower Act. Fla. Stat. § 448.101(5). A close temporal proximity can provide a basis to infer that protected activity and the adverse action are related. *E.g., Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590 (11th Cir. 2000).

Plaintiff was laid off by Lackmann on October 31, 2003. (Doc. No. 47, p. 6). Plaintiff has introduced evidence that she made repeated and ongoing objections to serving spoiled food until the time she was fired. (*E.g., id.* at pp. 54-55; 59-60; 63). Drawing all reasonable inferences in favor of Plaintiff, the nonmoving party, the Court can infer that the requisite causal connection between Plaintiff's protected conduct and the adverse employment action. Although Lackmann has offered a legitimate non-retaliatory reason for Plaintiff's termination, the Court cannot conclude at this juncture that Plaintiff cannot not establish such reason was pretextual, unworthy of belief, or partially motivated by a desire to retaliate against Plaintiff for her protected conduct. (Doc. No. 39, pp. 79, 81). Thus, the Court denies Lackmann's Motion for Summary Judgment with respect to Count VI.

**Conclusion**

Defendant's Motion for Summary Judgment (Doc. No. 37) is **GRANTED** with respect to Count IV and **DENIED** with respect to Counts I, II, III, V, VI.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 1, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record